THE DAYTON RUBBER COMPANY v. EUGENE SHAW, COMMISSIONER OF REVENUE OF THE STATE OF NORTH CAROLINA.

(Filed 23 May, 1956.)

**1. Appeal and Error § 49—**

Findings of fact by the trial court under agreement of the parties are conclusive when supported by any competent evidence.

**2. Taxation § 29—**

Statutory provision for the carry-over of loss from a prior year or years as a deduction from taxable income in a profitable year is a matter of grace, the General Assembly being under no constitutional or other legal compulsion to allow any carry-over.

**3. Same—**

Plaintiff is a foreign corporation doing business in this State. In computing its income taxable in this State during the year in question, royalty income received by it during the prior year from its non-unitary business, not connected with its operations in this State and not taxable as income here, and such royalty income for the year in question, were deducted from the net loss before computing the amount of the loss carry-over to be allocated to its operations within this State. *Held:* The administrative procedure is supported by the second and third paragraphs, subsection (d) of G.S. 105-147(6), and is upheld.

**4. Taxation § 23½—**

While an administrative interpretation of a taxing statute is not controlling, and such interpretation which is in direct conflict with the clear intent and purpose of the statute may not stand, nevertheless an administrative construction will be given consideration in interpreting the statute and is *prima facie* correct. G.S. 105-264.

DEVIN, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Dan K. Moore, J.,* September Term, 1955, of HAYWOOD.

This is a civil action to recover the sum of ·$9,171.68 with interest from 20 July, 1954. The sum sought to be recovered is the amount of additional income tax and penalties assessed against the plaintiff for the year ending 31 October, 1950, which amount was paid under protest on 28 June, 1954. The plaintiff, within the time allowed by statute, demanded a refund of the amount so paid. The defendant, after giving the plaintiff a hearing on the questions involved, notified it by letter dated 7 July, 1954, that its request for refund had been denied. This action was instituted 6 July, 1955.

The cause was heard by the trial judge without a jury upon an agreed statement of facts and upon evidence taken on the question of administrative procedure of the North Carolina Department of Revenue in

RUBBER CO. *v.* SHAW, COMR. OF REVENUE.

applying the net economic loss carry-over as set out in Income Tax Regulation No. 2, promulgated on 10 February, 1944 by the Commissioner of Revenue, pursuant to the provisions of G.S. 105-262. The additional facts essential to an understanding of this appeal are as follows:

1. The plaintiff is a foreign corporation doing business both within and without North Carolina. Since the plaintiff's principal business in North Carolina is manufacturing, its income tax is computed under paragraph 1 of G.S. 105-134.II. During plaintiff's fiscal year ending on 31 October, 1949, it suffered a net loss, as computed under the North Carolina Revenue Act, from its entire unitary business operations everywhere of $1,039,572.83. However, during the same fiscal year, the plaintiff received income from certain royalties in the amount of $185,549.03. This royalty income arose from sources not connected with plaintiff's unitary business and no part of it was taxed by North Carolina. For the fiscal year ending on 31 October, 1950, plaintiff had a net income, as computed under the North Carolina Revenue Act, from its unitary business operations everywhere of $4,020,250.29. During the same fiscal year plaintiff had royalty income from non-unitary business activity of $131,594.96, none of which was taxed by North Carolina.

2. For the fiscal year ending on 31 October, 1949, the allocation ratio applicable to the plaintiff was 13.7932%. For the fiscal year ending on 31 October, 1950, the applicable allocation ratio was 21.9236%.

3. In computing its net income allocable to North Carolina for the fiscal year ending in 1950, the plaintiff took its net income from business operations everywhere and deducted from that figure the amount of $1,039,572.83, computed as its loss for the fiscal year ending in 1949. To the resulting figure of $2,980,677.46 the plaintiff applied the allocation ratio for 1950 and alleged that the portion of its net taxable income for 1950 allocable to North Carolina was the resulting amount of $653,471.80. The plaintiff then computed its tax at 6% of this figure.

4. In computing the tax deficiency which forms the basis of the assessment involved in this case, the defendant reduced the plaintiff's net tax accounting loss from its unitary business in 1949 by the amount of nontaxable royalty income received in that year. To the figure resulting from this reduction, the defendant then applied the allocation ratio applicable to the plaintiff for the year 1949 and permitted a carry-over in the amount of $117,797.21. Before permitting this sum to be deducted from the allocable part of the 1950 net income from unitary business, the defendant first reduced the carry-over by an allocable part of the nontaxable royalty income received in 1950. The resulting figure of $88,946.86 the defendant permitted as a deduction from the allocable portion of 1950 net income from unitary business operations.

5. After giving effect to the above method of calculating allowable carry-over from losses in 1949, the plaintiff's income tax paid by it as set forth in paragraph 3 above, for the year ending 31 October, 1950, was deficient in the sum of $8,337.89. This amount, together with interest of $833.79, was assessed against the plaintiff, making a total of $9,171.68.

On the foregoing facts and the evidence with respect to the administrative practice of the Department of Revenue in establishing a carry-over loss, the court found as a fact, "That it has been the administrative practice of the Department of Revenue since February 10, 1944, to reduce a net economic loss claimed by a taxpayer by the amount of nontaxable income received by the taxpayer during the year of the loss and to limit a deduction for net economic loss carry-over from a prior year to the allocable portion of such loss determined by applying to the entire loss, as reduced by nontaxable income of the year, the applicable allocation ratio of G.S. 105-134 for the year in which the loss is sustained and to reduce the carry-over loss deduction by an allocable amount of the nontaxable income received by the taxpayer in the year in which the loss is sought to be used as a deduction."

The court entered judgment to the effect that the plaintiff is entitled to recover nothing. From this judgment, plaintiff appeals, assigning error.

*William Medford for plaintiff.*

*Attorney-General Rodman and Assistant Attorney-General Behrends for the State.*

DENNY, J. It is conceded in the plaintiff's brief that the only disputed fact involved in this appeal is whether or not its claim has been handled in accordance with established administrative procedure by the North Carolina Department of Revenue. In our opinion, the finding of fact by the court below on this question is supported by competent evidence and is, therefore, not reviewable on appeal. *Ryan v. Wachovia Bank & Trust Co.,* 235 N.C. 585, 70 S.E. 2d 853; *Burnsville v. Boone,* 231 N.C. 577, 58 S.E. 2d 351; *Scott & Co. v. Jones,* 230 N.C. 74, 52 S.E. 2d 219. Consequently, the appeal only presents for our consideration and determination certain questions which involve an interpretation of the loss carry-over provisions contained in G.S. 105-147 (6) (d) and which are applicable to foreign and domestic corporations as well as to resident individuals.

The questions raised may be stated as follows: (1) Was the Commissioner of Revenue correct in his conclusion that under the above statute all income of the plaintiff, including that from non-unitary business,

must be considered before a loss can be established that may be carried over to the next tax year? (2) Must the loss be further reduced by including the nontaxable income received by the taxpayer in the year in which the loss is sought to be used as a deduction?

The reasons for permitting the carry-over loss deduction and for imposing the restrictions and limitations on it are set forth in paragraph First, subsection (d), of G.S. 105-147(6), as follows: "First, the purpose in allowing the deduction of net economic loss of a prior year or years is that of granting some measure of relief to taxpayers who have incurred economic misfortune or who are otherwise materially affected by strict adherence to the annual accounting rule in the determination of taxable income, and the deduction herein specified does not authorize the carrying forward of any particular items or category of loss except to the extent that such loss or losses shall result in the impairmen of the net economic situation of the taxpayer such as to result in net economic loss as hereinafter defined."

How the economic loss shall be determined is set forth in paragraphs Second and Third of the above statute, as follows: "Second, the net economic loss for any year shall mean the amount by which allowable deductions for the year other than contributions, personal exemptions, prior year losses, taxes on property held for personal use, and interest on debts incurred for personal rather than business purposes shall exceed income from all sources in the year including any income not taxable under this atricle.

"Third, any net economic loss of a prior year or years brought forward and claimed as a deduction in any income year may be deducted from taxable income of the year only to the extent that such carry-over loss from the prior year or years shall exceed any income not taxable under this article received in the same year in which the deduction is claimed, . . ."

We need not discuss the statute (G.S. 105-134.II) with respect to the method used to arrive at the formula applicable to income earned by a foreign corporation in a multiple-state business. It is conceded that the formula percentage for each year involved is correct. It is further conceded by the defendant that the plaintiff in computing its economic loss in 1949, properly excluded the named deductions in the second paragraph of subsection (d) of G.S. 105-147(6) as set forth above, but it did not take into account other income received but not taxable under G.S. 105-134.

It is also conceded by the defendant that the royalty income of the plaintiff in 1949 and 1950 was from non-unitary business operations having no relation or connection with the plaintiff's manufacturing activities in North Carolina. Thus, it is clear that no part of it could

be taxed as income in North Carolina. However, including this non-taxable income, in arriving at an allowable deduction for carry-over purposes to be deducted from taxable income in a succeeding year, is, in our opinion, required by G.S. 105-147(6) (d), and we so hold. Our Legislature was under no constitutional or other legal compulsion to allow any carry-over to be deducted from taxable income in a future year. It enacted the carry-over provisions purely as a matter of grace, gratuitously conferring a benefit but limiting such benefit to the net economic loss of the taxpayer after deducting therefrom the allocable portion of such taxpayer's nontaxable income.

All the Commissioner of Revenue did in this case was to take the economic loss of the plaintiff for its fiscal year ending 31 October, 1949, in the sum of $1,039,572.83, and reduce it by the amount of its non-taxable income in the sum of $185,549.03, as provided in the second paragraph of subsection (d) of G.S. 105-147(6). This established a net economic loss of $854,023.80 for the fiscal year ending 31 October, 1949. The defendant then applied the allocable ratio of 13.7932% applicable to the plaintiff for the 1949 fiscal year, which established the amount of the permissible carry-over as $117,797.21. Before permitting this sum to be deducted, however, from the allocable part of the 1950 net income from unitary business, the Commissioner of Revenue first reduced the carry-over by the allocable part of the nontaxable income received by the plaintiff during its fiscal year ending 31 October, 1950, as provided in the third paragraph of subsection (d) of G.S. 105-147 (6). This further reduced the carry-over loss from $117,797.21 to $88,946.86. This was arrived at by taking the non-unitary income of the plaintiff for the fiscal year ending 31 October, 1950, in the amount of $131,594.96, and applying the allocable ratio of 21.9236% applicable to the plaintiff for the 1950 fiscal year and deducting the amount from the $117,797.21 carry-over. The resulting figure of $88,946.86 was allowed as a deduction from the allocable portion of the 1950 net income from the unitary business operations of the plaintiff.

The provisions of our statute are unlike those in the statute involved in the case of *Bowman Dairy Company v. Wisconsin Tax Commission*, 240 Wis. 1, 1 N.W. 2d 905, cited and relied upon by the plaintiff to sustain its contention that if the nontaxable income is to be included in determining the net economic loss it should be included only for the fiscal year in which the loss occurred. The cited case seems to so hold. However, our statute expressly provides otherwise. Hence, the contention is untenable.

In our opinion, the method used in arriving at the deductible loss of $88,946.86, and allowed as a deduction from the allocable portion of the plaintiff's 1950 net income from its unitary business operations, is

supported by the second and third paragraphs of subsection (d) of G.S. 105-147(6).

Moreover, the construction given the provisions of our tax laws by the Commissioner of Revenue "shall be *prima facie* correct and a protection to the officers and taxpayers affected thereby." G.S. 105-264. The construction given a taxing statute by the Commissioner of Revenue will be given consideration by the Court, though not controlling. *Bottling Co. v. Shaw*, 232 N.C. 307, 59 S.E. 2d 819; *Knitting Mills v. Gill*, 228 N.C. 764, 47 S.E. 2d 240; *Valentine v. Gill*, 223 N.C. 396, 27 S.E. 2d 2; *Powell v. Maxwell*, 210 N.C. 211, 186 S.E. 326. However, the Court will not follow an administrative interpretation which is in direct conflict with the clear intent and purpose of the statute under consideration. *Watson Industries v. Shaw*, 235 N.C. 203, 69 S.E. 2d 505. In the instant case, however, we have found no conflict between the Income Tax Regulation No. 2, promulgated on 10 February, 1944 by the Commissioner of Revenue and followed by the Department of Revenue in its administrative practice with respect to carry-over losses, and the statutory provisions with respect thereto in G.S. 105-147(6)(d).

The judgment of the court below is
Affirmed.

DEVIN, J., took no part in the consideration or decision of this case.