GOOD WILL DISTRIBUTORS (NORTHERN), INC. v. JAMES S. CURRIE, COMMISSIONER OF REVENUE OF THE STATE OF NORTH CAROLINA.

(Filed 4 November, 1959.)

1. **Pleadings § 28—**

   Motion for judgment on the pleadings is in the nature of a demurrer and raises the question of law whether the uncontroverted facts alleged in the pleadings entitle plaintiff to judgment.

2. **Same—**

   Where it is determined that plaintiff's motion for judgment on the pleadings should have been denied, but the action is not dismissed because the defective statement of a good cause of action might be aided by amendment, *held* defendant is entitled to a dismissal if plaintiff fails to amend, since the prior judgment determines that upon the facts alleged plaintiff is not entitled to recover, and evidence of additional facts could avail plaintiff nothing if such evidence be not supported by allegation.

3. **Taxation § 17—**

   In cases involving carry-forward loss deductions on the part of a corporation resulting from a merger, the courts will look beyond the corporate facade and to substance rather than form.

4. **Same—**

   A corporation resulting from a merger is not entitled to deduct from

its taxable income loss carry-over of one or more of its constituent corporations unless there is a continuity of the business enterprise which has not been altered, enlarged, or materially affected by the merger. G.S. 105-147(9)(d).

5. **Same—Merged corporation held not entitled to loss carry-over of constituent corporation under facts of this case.**

Where three separate corporations operating in separate territories, with some overlapping, are merged, and the corporation resulting from the merger carries on business of the same type and kind in the same territory as had the three constituent corporations before the merger, with the same stockholders holding stock in the same proportion, *held* by reason of the merger a new and more expansive enterprise exists, which new enterprise did not suffer the loss of any of its constituent corporations, and there is no continuity of business enterprise so as to entitle it to carry over the loss of one of its constituent corporations in computing its income tax.

6. **Same—**

The statutory provision for a loss carry-over is purely a matter of legislative grace, and such provision will not be construed so as to give a "windfall" to a taxpayer who happens to have merged with other corporations and thus give it a tax advantage over other corporations which have not merged.

HIGGINS, J., not sitting.

APPEAL by defendant from *Craven, S. J.,* April, 1959 Term, of GASTON.

This is an action to recover income taxes paid under protest. The case was heard upon the facts alleged in the complaint and facts stipulated.

From judgment in favor of plaintiff for recovery of the tax payment with interest thereon, defendant, Commissioner of Revenue, appealed and assigned error.

*Basil L. Whitener and Wade W. Mitchem for plaintiff, appellee.*

*Attorney General Seawell and Assistant Attorneys General Abbott and Pullen for defendant, appellant.*

MOORE, J. This case was before this Court at the Fall Term, 1957. *Distributors v. Shaw, Commissioner of Revenue,* 247 N.C. 157, 100 S.E. 2d 334. Subsequently James S. Currie, Commissioner of Revenue, was, by consent, substituted as party defendant for former Commissioner Eugene G. Shaw.

A decision of the questions presented on the present appeal requires a brief review of the pleadings and a history of the proceedings had

herein. However, the former opinion should be considered in connection with the discussion here.

The complaint, filed 30 November 1956, alleges substantially the following facts:

The three corporations hereinafter named were, prior to 1 July, 1954, separate and distinct corporate entities chartered by and doing business in North Carolina. On 1 July, 1943, Catholic Books (Northeast), Inc., and Good Will Distributors (Mid-Atlantic), Inc.,—hereinafter referred to as "Mid-Atlantic"—merged with and into Good Will Distributors (Northern), Inc.,—hereinafter called "Northern"— thus forming the resulting corporation, the plaintiff in this action. The merger was effected pursuant to the then G.S. 55-165. Mid-Atlantic suffered a net economic loss of $9,587.75 during its fiscal year ending 31 October, 1953. A portion of this loss was carried forward as a deduction from the net taxable income of $1,758.93 realized during the period from 31 October, 1953 to date of merger. There remained a net economic loss of $7,828.82 at the time of the merger. Plaintiff, Northern, in its income tax return for the fiscal year ending 31 October, 1954, deducted Mid-Atlantic's pre-merger loss of $7,828.82 from Northern's net taxable income. G.S. 105-147(6)(d)—now G.S. 105-147(9)(d). The Commissioner of Revenue did not allow the deduction and assessed plaintiff with $564.28 additional income tax. Plaintiff paid this under protest and sued to recover the amount with interest. G.S. 105-267.

Defendant demurred to the complaint on the ground that it "fails to state sufficient facts to constitute a cause of action." At the March Term, 1957, of the Superior Court of Gaston County the court overruled the demurrer. The defendant then answered the complaint, admitted all the factual allegations and denied only the legal conclusions stated therein. At the May Term, 1957, plaintiff moved for judgment on the pleadings. The motion was allowed and judgment was rendered in favor of plaintiff. Defendant excepted and appealed. On appeal this Court reversed the judgment of the Superior Court but did not dismiss the action. *Distributors v. Shaw, Commissioner of Revenue, supra.* The opinion stated, *inter alia:* "The facts alleged are important in determining the right (to deduct), but of equal or greater importance to that right are facts *not alleged.* (Parentheses ours.) . . . We are not called upon to determine what relief, if any plaintiff might be entitled to upon a further development of the facts."

The case was not again heard in Superior Court until the April Term, 1959. In the meanwhile there was no amendment to the complaint and no motion to amend. When the case was called for trial defendant moved to dismiss the action. The motion was overruled

and defendant excepted. This exception is the basis of the first assignment of error on this appeal.

Defendant's position is stated in his brief as follows: ". . . (T)here having been no motion to amend the complaint and no amendment to the complaint in all of the intervening time (some 17 months), it would seem inescapable that, if plaintiff was not entitled to recover according to the decision of the Supreme Court, the defendant was entitled to have the action dismissed. . . . Appellant contends that the denial of his motion was error as being directly opposed to the decision of the Supreme Court." With this contention we agree.

When the case was here before the only question for decision was whether or not plaintiff was entitled to judgment on the pleadings. Our Court held that it was not.

"A motion for judgment upon the pleadings is in the nature of a demurrer *ore tenus* . . ." North Carolina Practice and Procedure: McIntosh (Second Edition), Vol. 1, section 1261, p. 702. In *Erickson v. Starling*, 235 N.C. 643, 656, 71 S.E. 2d 384, it is said: "A motion for judgment on the pleadings is in the nature of a demurrer. (Citing cases). Its function is to raise this issue of law: Whether the matters set up in the pleading . . . are sufficient in law to constitute a cause of action. . . . (Citing cases). . . . On a motion for judgment on the pleadings, the presiding judge should consider the pleadings, and nothing else. (Citing authorities)." A careful reading of the former opinion in this case indicates that the Court considered the motion for judgment on the pleadings a demurrer. It ruled in effect that the complaint was insufficient to support a judgment in favor of plaintiff, but the action was not dismissed. On demurrer an action will not be dismissed unless the allegations of the complaint affirmatively disclose a defective cause of action, that is, that plaintiff has no cause of action against the defendant. *Skipper v. Cheatham,* 249 N.C. 706, 711, 107 S.E. 2d 625.

In the former opinion this Court declared as a general rule of law that the resulting corporation in a merger may not bring forward as a deduction against net taxable income an economic loss of a constituent corporation. It also indicated that there are exceptions to this general rule. Therefore the action was not dismissed on the possibility that plaintiff, by amendment of the complaint, might bring itself within an exception.

A complaint, to withstand a demurrer *ore tenus* for failure to state a cause of action, must allege ultimate facts sufficient within themselves, if uncontroverted, to support a judgment final or a judgment and inquiry. And if evidence is offered upon trial, it must

conform to the pleadings. Allegations and proof must correspond. *Tarlton v. Keith,* 250 N.C. 298, 306, 108 S.E. 2d 621.

Since the plaintiff in the case *sub judice* did not seek to amend its complaint, it must be presumed that any further ultimate facts it might have alleged would not improve its position. No amount of proof, of whatever kind or nature, could supply the deficiencies of a defective complaint. The court erred in overruling the motion to dismiss.

Even so, plaintiff contends that its understanding and interpretation of the former opinion of this Court in the case at bar is that plaintiff would "be permitted to offer proof . . . in support of the existence of the ultimate facts alleged in the complaint." Therefore, we are constrained to consider this appeal also in the light of the facts stipulated *dehors* the complaint.

After Judge Craven had overruled the motion to dismiss, defendant, without waiving his exception to the overruling of the motion, stipulated the following facts in addition to those alleged in the complaint:

"That prior to the merger each of the constituent corporations and Good Will Distributors (Northern), Inc., were engaged in the distribution of books and Bibles through the media of independent contractors and franchise dealers. They were engaged in the same kinds of business, in fact, in identical businesses but in different territories, with some overlapping in certain of the territories. After the merger the same character of business was conducted in the same territories in which constituent companies had operated prior to the merger.

"The relative net worth of the different corporations on the date of the merger was as follows:

"Good Will Distributors (Northern), Inc., did not close its books. Its earned surplus account as of October 31, 1953, (the end of its first year of operation) showed a deficit of $18,855.06, which as a part of the economic loss carry-over was not disallowed by the State. At the date of the merger Good Will Distributors (Mid-Atlantic), Inc., had a deficit of $7,659.79. At that date, Catholic Books (Northeast), Inc., had a surplus of $8,703.49.

"At the date of the merger there was brought forward from the constituent corporations unrealized profits as follows:

"Catholic Books (Northeast), Inc., $459,042.06;

"Good Will Distributors (Mid-Atlantic), Inc., $169.03;

"Good Will Distributors (Northern), Inc., $35,903.15.

"There was a continuity of ownership and continuance of the same business after the merger in that the same owners or persons held the businesses in the same proportion after the merger as before. The succeeding business was a continuation without change of the merging businesses."

The Court, in its former opinion herein, speaking through *Rodman, J.,* stated the law with logic and clarity as it relates to the merits of this case. We repeat now only so much thereof as is necessary in applying the law to the case as enlarged by the facts stipulated.

The pertinent North Carolina statute provides: "In computing net income there shall be allowed as deductions . . . Losses in the nature of net economic losses sustained in either or both of the two preceding income years arising from business transactions or to capital or property . . . (T)he purpose in allowing the deduction of net economic loss of a prior year or years is that of granting some measure of relief to taxpayers who have incurred economic misfortune or who are otherwise materially affected by strict adherence to the annual accounting rule in the determination of taxable income. . . ." G.S. 105-147(6)(d) - now G.S. 105-147(9)(d).

The Congress had previously enacted a similar provision applicable to federal income taxes. That provision has been the subject of many decisions of the United States Courts. In the former opinion of our Court in the instant case there is quotation with approval from *Libson Shops v. Koehler* (1957) 353 U.S. 382, 1 L. Ed. 2d 924, 77 S.C. 990, and with respect thereto our Court said: "We think the reason there assigned for denying the right to deduct is sound and is applicable to the facts of this case." In the *Koehler* case sixteen separate corporations, engaged in the sale of women's apparel at separate locations in two states, merged with plaintiff, a corporation created to provide management services for the sixteen. After the merger plaintiff conducted the entire business as a single enterprise. Prior to the merger the sixteen sales corporations were operated separately and filed separate income tax returns. The stock of all the corporations was owned by the same individuals in the same proportions. After the merger the individuals owned the stock in the resulting corporation in like proportion. The plaintiff, resulting corporation, after the merger, deducted pre-merger operating losses of three constituent corporations from post-merger income of plaintiff. The Commissioner of Internal Revenue disallowed the deductions. The United States Supreme Court said: "We conclude the petitioner is not entitled to a carry-over since the income against which the offset is claimed was not produced by substantially the same businesses which incurred the losses."

We take note here that the Court in the *Koehler* case did not base its decision on the theory that plaintiff was not the "same taxable entity" as those corporations which suffered the loss. It did not reject the separate entity theory in express terms, but chose to place the decision on other grounds. We do not reject that theory. There are situations in which justice may well require its application. But we adhere to the reasoning in the *Koehler* case as the basis for decision in the case before us.

As in the *Koehler* case, Courts, in cases involving carry-forward loss deductions, have been inclined to look beyond the corporate facade and to substance rather than form. The principle is well stated in *Cotton Mills v. Commissioner of Internal Revenue,* 61 F. 2d 291, 293, as follows: ". . . (U)nless the Courts are very careful to regard substance and not form in matters of taxation, there is grave danger on the one hand that the provisions of the tax laws will be evaded through technicalities and on the other that they will work unreasonable and unnecessary hardships on the taxpayer. . . . (Citing cases) . . . To permit the deduction in the consolidated return of affiliates or in the return of a corporation succeeding to their rights by merger would open the door to tax evasion by permitting a corporation with taxable income to escape taxation by the simple expedient of aquiring a business which had sustained losses in past years."

The decision in the *Koehler* case rests on a lack of "continuity of business enterprise." This expression has a definite and well defined meaning. There is continuity of business enterprise when the income producing business has not been altered, enlarged or materially affected *by the merger.* Two cases will illustrate the point. In *Manufacturing Co. v. U. S.,* 233 F. 2d 493, a corporation was engaged in manufacturing fibers. It desired to incorporate in another state to avoid certain provisions of the franchise statute of its home state. A corporation was formed in the other state with an authorized capital stock of 450,000 shares at a par value of $2.50 each. It issued 400 shares to the manufacturing corporation for $1,000.00. The manufacturing corporation then merged with the new corporation, the plaintiff. After the merger plaintiff claimed the right to deduct from net taxable income a pre-merger economic loss sustained by the constituent manufacturing corporation. The Court allowed the deduction on the ground that the resulting corporation, prior to the merger, owned no property except the $1,000.00 and engaged in no business. The income producing business was unchanged by the merger. In substance there was no change in business, only a change in name. In *Cotton Mills v. Commissioner of Internal Revenue, supra,* a corporation was engaged in the textile business. It

suffered a substantial economic loss and could not pay its creditors. A holding company was organized to avert financial disaster. Through this device creditors were induced to take stock in lieu of their claims. The manufacturing corporation was merged into the holding company. The resulting corporation brought forward the pre-merger economic loss of the constituent manufacturing company as a deduction from post-merger net income. This was allowed by the Court. The Court said: "If it had owned any business or property other than the stock and obligations of the (constituent corporation), there would be reason for denying to the corporation resulting from the merger the right to deduct such loss from its income." (Parentheses ours.)

Where there has been a merger of corporations, the resulting corporation may not deduct from its post-merger net income the pre-merger economic loss of its constituent corporations unless there is a "continuity of business enterprise" as above defined.

In the judgment in the instant case the court concluded that there was continuity of business enterprise and said ". . . such continuing business entity is entitled and permitted to carry over the net economic loss of the merged corporation as a deduction . . ." The facts do not support this conclusion. It is true that the constituent corporations, before the merger, and the resulting corporation, after the merger, engaged in sales and distribution of Bibles, books and literature of the same type and kind, the resulting corporation conducted business in the same territory as had the three constituent corporations before the merger, the resulting corporation had the same stockholders as the constituent corporations before the merger and the stockholders owned stock in the same proportion as before. But this does not constitute "continuity of business enterprise" according to the meaning of that term as applied in such cases.

The facts in this case are analagous with those in the *Koehler* case. Before the merger the three corporations operated in separate territories, though somewhat overlapping, made separate incomes and filed separate income tax returns. By virtue of the merger a larger and more expanded business came into being and included all of the former income producing businesses. There was no continuity of the business of either of the constituent corporations. By reason of the merger a new and more extensive enterprise has emerged. This new enterprise did not suffer the loss and cannot claim a deduction therefor.

As was said in the former opinion of this Court in the instant case, the enactment of loss carry-over legislation by the General Assembly was purely a matter of grace. The provision should not be

"construed to give a 'windfall' to a taxpayer who happens to have merged with other corporations." Its purpose "is not to give a merged taxpayer a tax advantage over others who have not merged." *Libson Shops v. Koehler, supra.*

The judgment below is reversed and plaintiff's action is dismissed. Reversed and action dismissed.

HIGGINS J., not sitting.